UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

DENNIS J. CHEATHAM,
ADC #136117                                                                                    PLAINTIFF

V.                                    5:16CV00239 BRW/JTR

JOHN DOES 1-4,
unknown Varner Unit Warden
and Correctional Officers; and
CHERYLE JOHNSON,
Captain, Varner Unit, ADC                                                               DEFENDANTS

**RECOMMENDED PARTIAL DISPOSITION**

The following Recommended Partial Disposition ("Recommendation") has been sent to United States District Judge Billy Roy Wilson. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the entry of this Recommendation. The failure to timely file objections may result in waiver of the right to appeal questions of fact.

**I.   Introduction**

Plaintiff, Dennis J. Cheatham ("Cheatham"), is a prisoner in the North Central Unit of the Arkansas Department of Correction ("ADC"). He has filed this *pro se* §

1983 action alleging that, while he was in the Varner Unit, Defendants Captain Cheryle Johnson ("Johnson") and John Does, who are unknown members of a Security Response Team and the warden of the Varner Unit, failed to protect him from being attacked by two other prisoners. *Docs. 2, 6, & 24*.

Johnson has filed two Motions to Dismiss and two Briefs in Support arguing that: (1) she is entitled to sovereign and qualified immunity; (2) Cheatham has failed to state a claim upon which relief may be granted; and (3) Cheatham has failed to exhaust his administrative remedies. *Docs. 12, 13, 25, & 26*. Cheatham has filed a Response to the Motions to Dismiss and supporting Exhibits. *Docs. 18 & 22*.

## II. Relevant Facts

Cheatham's failure to protect claims are based on the following facts as contained in his pleadings:[1]

1.  On April 27, 2016, Cheatham lived on the top floor of 4 Barracks, a two-story open barrack at the Varner Unit. *Docs. 2, 6, & 24*.

2.  Around 11:00 p.m., Cheatham was on the second floor of 4 Barracks when two prisoners beat and stabbed him multiple times, and left him in a semi-conscious state on the floor. Cheatham *admits* this was a "surprise attack" and that he

---

[1] A motion to dismiss should be granted if, assuming the truth of the factual assertions made in the plaintiff's pleadings, he has failed to state a viable claim as a matter of law. *See* Fed. R. Civ. P. 12(b)(6); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

had no prior problems with his two attackers. *Id.*

3.      Cheatham's two attackers then went to the first floor of 4 Barracks and attacked another prisoner ("the first floor prisoner"). After being stabbed multiple times, the first floor prisoner broke free from the two attackers and banged on the door to 4 Barracks. The officer outside of 4 Barrack rescued the first floor prisoner, and immediately called for back-up. *Id.*

4.      Johnson and the Security Response Team answered the call. They spoke to the first floor prisoner, who was in the hallway outside of 4 Barracks, and took him to the infirmary for medical treatment. Johnson and the Security Response Team did *not* enter 4 Barracks to apprehend the attackers, seize their weapons, or otherwise secure the barracks. *Id.*

5.      After Johnson and the Security Response Team left, the two attackers *returned* to the second floor of 4 Barracks, found Cheatham, and stabbed him several more times. In total, Cheatham was stabbed twenty-three times. *Id.*

### III. Discussion

**A.     Sovereign Immunity**

Cheatham has sued Johnson in both her official and individual capacity. Johnson correctly argues that the doctrine of sovereign immunity prohibits Cheatham

from obtaining monetary damages against her, in her official capacity.[2] *See Zajrael v. Harmon*, 677 F.3d. 353, 355 (8th Cir. 2012); *Larson v. Kempker*, 414 F.3d 936, 939-40 (8th Cir. 2005). Thus, Cheatham's failure to protect claim against Johnson, *in her official capacity,* should be dismissed, with prejudice.

## B.    Qualified Immunity

Johnson argues that qualified immunity shields her from the failure to protect claim Cheatham has asserted against her in her individual capacity.

Qualified immunity protects government officials, like Johnson, from liability for monetary damages in a § 1983 action unless their conduct violates a clearly established federal statutory or constitutional right that a reasonable person would have known. *Ashcroft v. Al-Kidd*, 563 U.S. 731, 736 (2011)*; Saylor v. Nebraska*, 812 F.3d 637, 643 (8th Cir. 2016). However, Johnson is *not* entitled to qualified immunity if: (1) the facts, *as alleged by Cheatham*, state a viable claim for the violation of a constitutional right;[3] and (2) that constitutional right was clearly established at the time of the alleged violation. *See Dadd v. Anoka Cnty.,* 827 F.3d 749, 754-55 (8th

---

[2] Sovereign immunity does *not* apply to a request for prospective injunctive relief. *Id.* Because Cheatham is no longer incarcerated in the Varner Unit, he has *not* requested any injunctive relief.

[3] Johnson also makes a separate argument that she is entitled to dismissal, pursuant to Federal Rule of Civil Procedure 12(b)(6), because Cheatham has failed to state a viable failure to protect claim against her. Because the Rule 12(b)(6) analysis is the same as the first prong of the qualified immunity analysis, the Court will consider these arguments together. *See Dadd,* 827 F.3d at 745-55.

Cir. 2016); *Hager v. Ark. Dept. of Health*, 735 F.3d 1009, 1012 (8th Cir. 2013).

To state a viable Eighth Amendment failure to protect claim, the allegations in Cheatham's pleadings must establish that: (1) objectively, there was a substantial risk that he might be seriously harmed; and (2) subjectively, Johnson was deliberately indifferent to that substantial risk of serious harm. *See Walls v. Tadman*, 763 F.3d 778, 782 (8th Cir. 2016); *Holden v. Hirner,* 663 F.3d 336, 341 (8th Cir. 2011).

Cheatham's pleadings do *not* assert a failure to protect claim against Johnson or the other Defendants for the *first attack*, which he concedes was a surprise attack. *See Schoelch v. Mitchell*, 625 F.3d 104, 1048 (8th Cir. 2010) (holding that prison officials cannot be held liable for failing to protect an inmate from a surprise attack); *Tucker v. Evans,* 276 F.3d 999, 1001-02 (8th Cir. 2010) (same).

However, Cheatham alleges that Johnson violated his constitutional rights by failing to protect him from *the second attack*, which he believes would not have occurred if Johnson and the Security Response Team had entered 4 Barracks to locate and disarm the two attackers as soon as they arrived on the scene. In other words, Cheatham contends that Johnson and the Security Response team were deliberately indifferent to the serious and obvious risk of injury to other prisoners that was created by their decision *not* "to enter 4 Barracks to secure, investigate, detain likely suspects, and/or confiscate weapons involved." Doc. 19 at 4; Doc. 24 at 4. Cheatham claims

that if Johnson had done so, he would not have been attacked *the second time*.[4]

Johnson argues that she is entitled to dismissal of that claim because, as to the second element (*subjective* deliberate indifference to a substantial risk of serious harm), she did not *specifically know* that Cheatham had been attacked and was lying on the second tier of 4 Barracks in a semi-conscious state. *See Farmer v. Brennan*, 511 U.S. 825, 838 (1994) (holding that a prison official's negligent "failure to alleviate a significant risk that he should have perceived but did not" fails to rise to the level of a constitutional violation); *Pagels v. Morrison,* 335 F.3d 736, 742 (8th Cir. 2009) (same).

Johnson's argument construes Cheatham's allegations too narrowly. In his pleadings, Cheatham alleges that Johnson *actually knew* that *armed* prisoners, who had just viciously shanked one prisoner, *were still inside* 4 Barracks where *the other prisoners* in that *open barrack* were still at risk of being attacked. In other words, the allegations in Cheatham's pleadings are that: (1) objectively, there was a "substantial risk" that he and *other prisoners* in 4 Barracks "might be seriously harmed" by the two

---

[4] Johnson argues that Cheatham is improperly attempting to hold her vicariously liable for the actions of the Security Response Team. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (explaining that, because there is no vicarious liability in § 1983 actions, a prisoner must allege facts suggesting that "each Government-official defendant, through the official's own individual actions, has violated the Constitution"). To the contrary, Cheatham specifically alleges that Johnson, *through her own individual actions,* directly violated his constitutional rights when she failed to enter and/or order the Security Response Team to enter 4 Barracks to locate and disarm the attackers, thereby preventing them from carrying out the second attack on Cheatham.

attackers roaming around the open barrack armed with shanks; and (2) subjectively, Johnson was deliberately indifferent to this obvious and substantial risk of harm to him and the other prisoners in 4 Barracks, as demonstrated by her and the Security Response Team failing to enter 4 Barracks, as soon as they arrived at the scene, to locate and disarm the attackers before they could further injure anyone else. As a result, the prisoners in 4 Barracks were left to fend for themselves against the two armed assailants, even though Johnson and the Security Response Team *knew* that the assailants had used shanks and badly injured the first floor prisoner, and that they remained at large in the open barrack with those weapons still in their hands to use against other prisoners in 4 Barracks.

These factual allegations are sufficient to support a failure to protect claim. *See Farmer*, 511 U.S. at 843 ("[I]t does not matter . . . whether a prisoner faces an excessive risk of attack for reasons personal to him or *because all prisoners in his situation face such a risk*") (emphasis added). Consistent with Court's holding in *Farmer*, the Eighth Circuit has held that prison officials can be held liable, in a § 1983 action, if they are deliberately indifferent to a known and substantial risk of harm to any of the prisoners in their care -- regardless of whether the threat of harm was targeted specifically at the plaintiff. *See, e.g., Doe v. Washington Cnty.*, 150 F.3d 920, 923 (8th Cir. 1998) (affirming a jury verdict where jail officials were subjectively

attackers roaming around the open barrack armed with shanks; and (2) subjectively, Johnson was deliberately indifferent to this obvious and substantial risk of harm to him and the other prisoners in 4 Barracks, as demonstrated by her and the Security Response Team failing to enter 4 Barracks, as soon as they arrived at the scene, to locate and disarm the attackers before they could further injure anyone else. As a result, the prisoners in 4 Barracks were left to fend for themselves against the two armed assailants, even though Johnson and the Security Response Team *knew* that the assailants had used shanks and badly injured the first floor prisoner, and that they remained at large in the open barrack with those weapons still in their hands to use against other prisoners in 4 Barracks.

These factual allegations are sufficient to support a failure to protect claim. *See Farmer*, 511 U.S. at 843 ("[I]t does not matter . . . whether a prisoner faces an excessive risk of attack for reasons personal to him or *because all prisoners in his situation face such a risk*") (emphasis added). Consistent with Court's holding in *Farmer*, the Eighth Circuit has held that prison officials can be held liable, in a § 1983 action, if they are deliberately indifferent to a known and substantial risk of harm to any of the prisoners in their care -- regardless of whether the threat of harm was targeted specifically at the plaintiff. *See, e.g., Doe v. Washington Cnty.*, 150 F.3d 920, 923 (8th Cir. 1998) (affirming a jury verdict where jail officials were subjectively

aware that overcrowding created a substantial risk of harm to all juvenile detainees in their care); *Riley v. Olk-Long*, 282 F.3d 592, 595-997 (8th Cir. 2002) (affirming a jury verdict where officials were subjectively aware that a guard had been accused, numerous times, of sexually assaulting female prisoners prior to assaulting the plaintiff); *Nei v. Dooley*, 372 F.3d 1003, 1007 (8th Cir. 2004) (denying summary judgment when there was evidence that prison officials were subjectively aware that a HIV-positive inmate was threatening to assault and infect his fellow inmates). Because this legal precedent was well established long before the April 27, 2016 attack on Cheatham, Johnson is not entitled to qualified immunity.

**C.     Exhaustion of Administrative Remedies**

Finally, Johnson argues that Cheatham's failure to protect claim should be dismissed, without prejudice, because he failed to exhaust his administrative remedies.

The Prison Litigation Reform Act requires inmates to: (1) fully and properly exhaust their administrative remedies as to each claim in the complaint; and (2) complete the exhaustion process prior to filing an action in federal court. *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003); *Graves v. Norris*, 218 F.3d 884, 885 (8th Cir. 2000). Importantly, the Supreme Court has emphasized that "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007) Thus, to satisfy the PLRA, a prisoner must

fully comply with the specific procedural requirements of the incarcerating facility. *Id.*

Johnson alleges that Cheatham did not timely and properly comply with the ADC's exhaustion policy. Johnson bases this argument on the single grievance Cheatham attached to his Complaint. *Doc. 2 at 8-11.*

Exhaustion of administrative remedies is an *affirmative defense* that must be proved by the defendants. *Jones*, 549 U.S. at 216; *Nerness v. Johnson,* 401 F.3d 874, 876 (8th Cir. 2005). Johnson has *not* presented *any evidence:* (1) explaining the ADC's exhaustion policy; (2) demonstrating how Cheatham's grievance or grievances violated the ADC's exhaustion policy; or (3) verifying that the grievance Cheatham attached to his Complaint is the *only grievance* he filed regarding the April 27, 2016 attack.

Based on the current record, Johnson has not established that Cheatham failed to timely and properly exhaust his administrative remedies. Accordingly, at this time, she is not entitled to the dismissal of Cheatham's failure to protect based on his alleged failure to exhaust his administrative remedies.

## IV. Conclusion

IT IS THEREFORE RECOMMENDED THAT:

1.    Johnson's Motions to Dismiss *(Docs. 12 & 25)* be GRANTED, IN PART, and DENIED, IN PART.

2.    Cheatham's failure to protect claim against Johnson, in her official capacity, be DISMISSED, WITH PREJUDICE.

3.    Cheatham be allowed to PROCEED with his failure to protect claim against Johnson, in her individual capacity.

4.    The Court CERTIFY, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from any Order adopting this Recommended Disposition would not be taken in good faith.

Dated this 19th day of January, 2017.

*[signature: J. Thomas Ray]*

UNITED STATES MAGISTRATE JUDGE