# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# PINE BLUFF DIVISION

DENNIS J. CHEATHAM,
ADC #136117                                                                                   PLAINTIFF

V.                                    5:16CV00239 BRW/JTR

JOHN DOES 1-4, unknown Warden
and Correctional Officers; and
CHERYLE JOHNSON,
Captain, Varner Unit, ADC                                                                DEFENDANTS

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Billy Roy Wilson. Any party may file written objections to this Recommendation. Objections must be specific and include the factual or legal basis for disagreeing with the Recommendation. An objection to a factual finding must specifically identify the finding of fact believed to be wrong and describe the evidence that supports that belief.

An original and one copy of the objections must be received by the Clerk of this Court within fourteen (14) days of this Recommendation. If no objections are filed, Judge Wilson can adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may also waive any right to appeal questions of fact.

## I. Introduction

Plaintiff Dennis J. Cheatham ("Cheatham") is a prisoner in the Arkansas Department of Correction ("ADC"). In this *pro se* § 1983 action, Cheatham alleges that Defendants Captain Cheryle Johnson ("Johnson") and John Does, who are unknown members of a security response team and the warden of the Varner Unit, failed to protect him from being attacked by two other prisoners. *Docs. 2, 6, & 24.*

Johnson has filed a Motion for Summary Judgment, a Brief in Support, and a Statement of Undisputed Facts arguing that Cheatham failed to properly exhaust his administrative remedies as to the failure to protect claim asserted against her. *Docs. 36, 37, & 38.* Cheatham has filed two Responses and a Statement of Disputed Facts. *Docs. 42, 43, & 44.* Thus, the issues are properly joined and ready for disposition.[1]

## II. Discussion

The Prison Litigation Reform Act ("PLRA") provides, in pertinent part, that: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other

---

[1] Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex,* 477 U.S. at 323. Thereafter, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. *See* Fed R. Civ. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011).

correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The purposes of the exhaustion requirement include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock,* 549 U.S. 199, 219 (2007); *see also Woodford v. Ngo*, 548 U.S. 81-89-91 (2006).

The PLRA requires inmates to: (1) fully and properly exhaust their administrative remedies as to each claim in the complaint; and (2) complete the exhaustion process prior to filing an action in federal court. *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003); *Graves v. Norris*, 218 F.3d 884, 885 (8th Cir. 2000). Importantly, the Supreme Court has emphasized that "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones,* 549 U.S. at 218; *see also Woodford*, 548 U.S. at 90 (explaining that administrative exhaustion "means using all steps that the agency holds out, and doing so properly so that the agency addresses the issues on the merits"). Thus, to satisfy the PLRA, a prisoner must *fully and properly* comply with the specific exhaustion requirements of the incarcerating facility.

To fully exhaust administrative remedies within the ADC, a prisoner must file:

(1) an informal resolution with the designated problem solver; (2) a grievance with the Warden, if attempts at informal resolution are unsuccessful; and (3) an appeal of the denial of the grievance to the ADC Deputy/Assistant Director. *Doc. 36, Exs. 1 & 2* (ADC Adm. Dir. 14-16 § IV(E) through (G)).

The parties *agree* that 16-553 is the *only* grievance Cheatham filed about the April 27, 2016 attack. *Docs. 38 & 44.* The issue in this case is whether Cheatham timely exhausted 16-553 through all three steps of the ADC's grievance procedure.

The *undisputed* facts relevant to that determination are as follows:

1. On Tuesday, May 3, 2016, Townsend filed informal resolution 16-553 (step 1) alleging that unknown ADC officers and security personnel failed to protect him from being stabbed twenty-three times by two other prisoners. *Doc. 36, Ex. 3.*

2. Pursuant to ADC's exhaustion policy, the designated problem solver's response to informal resolution 16-553 was due three "working days" later on Friday, May 6, 2016.[2] *Id., Ex. 2* (ADC Admin. Dir. 14-16 § IV(E)(4)). For unknown reasons, Cheatham did not receive a response on that day.

3. On Tuesday, May 10, 2016, Cheatham received the designated problem solver's response to informal resolution 16-553, stating the attack was being

---

[2] "Working days" are defined as "Monday through Friday, excluding state observed holidays." *Doc. 36, Ex. 2* (ADC Admin. Dir. 14-16 § III(E).

investigated by ADC officials. *Id., Ex. 3.*

4. On Friday, May 13, 2016, Cheatham filed grievance 16-553 (step 2), renewing his allegation that unknown ADC officers and security personnel failed to protect him from the April 27, 2016 attack. *Id.*

5. On Monday, May 16, 2016, the Warden's office rejected grievance 16-553 on the procedural ground that it was *untimely*, and did *not* reach or decide the merits of the grievance. *Id.* The ADC Deputy Director subsequently affirmed that decision on appeal (step 3). *Id.*

**A. Defendant Johnson's Argument for Dismissal**

Johnson argues that she is entitled to summary judgment because grievance 16-553 was *properly rejected* as untimely. Cheatham asserts in his Response that ADC officials prevented him from properly exhausting his administrative remedies by improperly finding that grievance 16-553 was untimely, and using that erroneous determination to reject the grievance on procedural grounds. *See Ross v. Blake,* 136 S. Ct. 1850, 1860 (2016) (explaining that administrative remedies are "unavailable" when prison administrators "thwart" inmates from properly using the grievance process); *Porter v. Sturm,* 781 F.3d 448, 452 (8th Cir. 2015) (holding that improper exhaustion is "excused" if prison officials "prevented prisoners from utilizing" the grievance procedure).

Section IV(E)(11) of the ADC's exhaustion policy provides that:

> If the designated problem solver . . . has failed to contact the inmate and attempt resolution of the complaint or failed to return Step One . . . within the designated three working days, the inmate *may* proceed to Step 2, the formal grievance, without completion of Step 1. In that instance, Step 2, the formal grievance, *must* be filed no later than six (6) working days from the submission of the Unit Level Grievance Form[3] pursuant to Step 1: this allows three (3) working days to wait for a response to Step 1, and three (3) working days to initiate Step 2. These are not three (3) additional days, i.e., if the problem solver returns Step One on the day it was submitted, the inmate has only three (3) working days from receipt of that response to file Step Two. The inmate will submit a copy of his/her Unit Level Grievance Form using the pink or yellow copy, whichever is most legible, that he/she retained following the instructions for Step Two.

*Doc. 36, Ex. 2 at 7-8* (emphasis added).[4]

The parties *agree* that Cheatham filed his informal resolution on Tuesday, May 3, and that the designated problem solver's response was due three working days later on Friday, May 6. The parties also *agree* that Cheatham did not receive a response by that deadline. Thus, pursuant to Section IV(E)(11), Cheatham's grievance was due on Wednesday, May 11, which was six working days from the date he filed his informal resolution on Tuesday, May 3. Cheatham failed to meet that deadline and filed his grievance two days late, on Friday, May 13.

---

[3] "Unit Level Greivance form" is the informal resolution.

[4] In other words, a prisoner must file his grievance *the earlier* of: (1) three working days from the day he received the problem solver's response; or (2) six working days from the day he filed the informal resolution.

To avert his grievance being deemed untimely, Cheatham argues that he was *not* required to file his grievance on Wednesday, May 11 because Section IV(E)(11) states that an inmate *"may"* -- not *must* -- "proceed to Step 2, the formal grievance, without completion of Step 1." *Doc 36, Ex. 3 at 7* (emphasis added). Unfortunately for Cheatham, his argument overlooks the following sentence of Section IV(E)(11), which clarifies that:

> In that instance, [which is when the designated problem solver does *not* timely respond to the informal resolution], Step 2, the formal grievance, *must* be filed no later than six (6) working days from the submission of the Unit Level Grievance form pursuant to Step 1: this allows three (3) working days to wait for a response to Step 1, and three (3) working days to initiate Step 2.

*Id.* (emphasis added). Read together, these two sentences make it clear that a prisoner *must* proceed to Step two within three working days of the deadline for receiving the problem solver's response to the informal resolution. *See Martin v. Fayram,* 849 F.3d 691, 696 (8th Cir. 2017) (explaining that: "Words or phrases that may seem ambiguous in isolation are often clarified by the remainder of the statutory scheme"); *J.P. Morgan Chase Bank v. Johnson,* 719 F.3d 1010, 1015 (8th Cir. 2013) (providing that courts should seek to "reconcile statutory provisions to make them consistent, harmonious, and sensible").

A further problem with Cheatham's interpretation of Section IV(E)(11) is that it would allow a prisoner to wait an indefinite amount of time for a response to his

informal resolution before filing his grievance. Such a result would be contrary to the ADC's exhaustion policy, which is designed to expeditiously resolve inmate complaints. *See J.P. Morgan Chase Bank*, 719 F.3d at 1015 (explaining that courts should not "give statutes a literal interpretation if it leads to absurd consequences").

Finally, courts in this District have consistently construed Section IV(E)(11) as *requiring* a prisoner to file a grievance within three days of the deadline for receiving a response to the informal resolution. *See, e.g, Green v. ADC,* 5:15CV00351 PSH (E.D. Ark. March 10, 2017) (unpublished decision); *Chew v. Huffman*, Case No. 1:16CV00087 JTK (E.D. Ark. Nov. 10, 2016) (unpublished decision); *Muhummad v. Evans,* Case No. 5:13CV00361 DPM (E.D. Ark. April 23, 2015) (unpublished decision). Accordingly, Cheatham's interpretation of Section IV(E)(11) cannot save his grievance from being deemed untimely filed.

Cheatham also contends that he was prevented from timely filing his grievance because, in May of 2016, he was confined in administrative segregation and not "able to move about and submit his paper work normally as if [he] was in population." *Doc. 44 at 2*. Cheatham also alleges that the grievance officer only came to Administrative Segregation on Tuesdays and Thursdays to pick-up grievance forms. *Id.*

Cheatham has *not* offered *any evidence* to support this contention, which is clearly contrary to the ADC's rule that a grievance officer must collect grievance

forms *daily.*[5] Additionally, it is *undisputed* that Cheatham filed his grievance on *Friday*, May 13, which demonstrates that the grievance officer came to Administrative Segregation more often then just Tuesdays and Thursdays.

Finally and most importantly, Cheatham did *not* raise this argument in his appeal challenging the decision that his grievance was untimely. Instead, Cheatham argued that his grievance was due seven days (rather than six days) from the date he received his response to the informal resolution (and not three days from the date the response to the informal resolution was due). *Doc. 36, Ex. 3.* As previously explained, Cheatham's interpretation of Section IV(E)(11) is incorrect. *See Jones,* 549 U.S. at 219 (explaining that one of the purposes of the PLRA is to allow "a prison to address complaints about the program it administers before being subjected to suit").

For all of the above reasons, the Court concludes that ADC officials correctly rejected greivance 16-553 as being untimely filed. Because Cheatham did not properly exhaust his administrative remedies within the ADC's grievance procedure,

---

[5] Section IV(F)(1) provides that: "The inmate should complete the date beside 'Step Two: Formal Grievance' and the section regarding resubmission (of this form) as to why the inmate considers the informal resolution unsuccessful, and deposit it into the designated grievance box; or submit it to a Staff Member if the inmate's assignment prevents access to the grievance box. *The Grievance Officer shall collect grievance forms daily, excluding weekends and holidays."* Doc. 36, Ex. 2 at 8* (emphasis added). Thus, if Cheatham's confinement in administrative segregation made it impossible for him to put his grievance in the designated grievance box, he could have handed his grievance to any staff member working in administrative segregation, with the request that he or she give it to the grievance officer who visited the administrative segregation area daily.

he is precluded from bringing his failure to protect claim against Johnson in this § 1983 action.[6] *See Woodford*, 548 U.S. at 90 (holding that proper exhaustion under the PLRA means "using all steps that the agency holds out, and doing so properly so that the agency addresses the issues on the merits"); *Jones,* 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court"). Accordingly, the Court recommends that Johnson's Motion for Summary Judgment be granted, and that Cheatham's failure to protect claim against her be dismissed, without prejudice.

**B.     Dismissal of the Doe Defendants**

As previously explained, grievance 16-553 is the *only* grievance Cheatham filed about the April 26, 2016 attack, and the alleged failure of Johnson and the Doe Defendants to protect from that attack. Because the Court has concluded that grievance 16-553 was properly found to be untimely, this means Cheatham also has failed to exhaust his administrative remedies as to the unnamed Doe Defendants.

Thus, the Court also recommends that Cheatham's failure to protect claim against the Doe Defendants be dismissed, without prejudice. *See Angelo Iafrate Constr. LLC v. Potashnick Constr., Inc.* 370 F.3d 715, 722 (8th Cir. 2004) (explaining

---

[6] In light of this conclusion, the Court does not need to address Johnson's alternative argument that she is also entitled to dismissal because Cheatham failed to properly name her in 16-553, as required by Section IV(C)(4) of the ADC's exhaustion policy.

that "if an answering party asserts a defense on the merits that equally applies to the other defendant, the success of the defense operates as a discharge to all the defendants"); *Owens/Mitchell v. Burl,* Case No. 4:14CV00126 DPM (E.D. Ark. May 7, 2014) (unpublished opinion) (holding, in a prisoner § 1983 action, that the "non-moving Defendants" were entitled dismissal based on a statute of limitations defense that was raised by other Defendants), *aff'd without comment,* 2014 WL 1820639 (8th Cir. Sept. 29, 2014) (unpublished decision).

### III. Conclusion

IT IS THEREFORE RECOMMENDED THAT Johnson's Motion for Summary Judgment *(Doc. 36)* be GRANTED, and that Cheatham's failure to protect claim against all Defendants be DISMISSED, WITHOUT PREJUDICE.

Dated this 24th day of April, 2017.

_____
UNITED STATES MAGISTRATE JUDGE